**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| N. D.; T. D., on behalf of a class of those similarly situated, | No. 23-35580 |
| *Plaintiffs-Appellants*, | D.C. No. 2:22-cv-01621-LK-MLP |
| v. | |
| CHRIS REYKDAL, in his capacity as the Superintendent of Public Instruction; OFFICE OF THE SUPERINTENDENT OF PUBLIC INSTRUCTION, a Washington State Agency, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
Lauren J. King, District Judge, Presiding

Argued and Submitted March 25, 2024
Seattle, Washington

Filed May 22, 2024

Before: Kim McLane Wardlaw, William A. Fletcher, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

**SUMMARY**[*]

**Individuals with Disabilities Education Act**

The panel vacated the district court's order denying plaintiff students' motion for a preliminary injunction regarding the State of Washington's obligation under the Individuals with Disabilities Education Act to provide special education to disabled 21-year-olds, and remanded for further proceedings.

The IDEA permits a State to discontinue special education services as early as age 18 if providing special education to students up to age 22 "would be inconsistent with State law or practice . . . respecting the provision of public education to children" of the same age. The State of Washington cuts off special education services at the end of the school year in which a student turns 21. Although the State's public schools also cut off eligibility for nondisabled students at age 21, the State offers certain adult-education programs to 21-year-olds.

The panel held that it had jurisdiction, and the appeal was not moot, because one of the named plaintiffs had yet to turn 22, and defendants did not show that he had become ineligible for special education due to receipt of a diploma,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

nor that relief such as reinstatement to special education would be impossible for him.

Assuming without deciding that the plaintiffs sought a mandatory rather than a prohibitory injunction, the panel held that, even under the standards applicable to mandatory injunctions, the district court abused its discretion in denying an injunction. Applying *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013), and agreeing with the First and Second Circuits, the panel concluded that the plaintiffs had a high likelihood of success on the merits of their claim because the availability in Washington of the adult-education programs, a form of free public education for nondisabled 21-year-olds, triggered an obligation under 20 U.S.C. § 1412(a)(1)(B)(i) to provide special education to disabled 21-year-olds. The panel further held that, in the absence of a preliminary injunction, the plaintiffs would suffer irreparable harm from the denial of access to special education. The panel concluded that the balance of hardships tipped in the plaintiffs' favor and that an injunction would be in the public interest. The panel therefore vacated the district court's order and remanded for further proceedings including the entry of a preliminary injunction.

## COUNSEL

Ian B. Crosby (argued), Susman Godfrey LLP, Seattle, Washington; Lara R. Hruska and Alexander F. Hagel, Cedar Law PLLC, Seattle, Washington; for Plaintiffs-Appellants.

Brian H. Rowe (argued) and Stephen T. Sipe, Assistant Attorneys General; Robert W. Ferguson, Attorney General;

Office of the Attorney General, Seattle, Washington; for Defendants-Appellees.

## OPINION

MILLER, Circuit Judge:

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, requires States that receive certain federal grants to provide special education to disabled students until their 22nd birthday, but it permits a State to discontinue services as early as age 18 if providing special education to older students "would be inconsistent with State law or practice . . . respecting the provision of public education to children" of the same age. 20 U.S.C. § 1412(a)(1)(B)(i). The State of Washington cuts off special education services at the end of the school year in which a student turns 21. Although its public schools also cut off eligibility for nondisabled students at age 21, Washington offers certain adult-education programs to 21-year-olds. This case presents the question whether the availability of those adult-education programs triggers an obligation under the IDEA to provide special education to disabled 21-year-olds. We conclude that it does. We vacate the district court's order denying a preliminary injunction and remand for further proceedings.

I

The IDEA provides federal funds to States to pay for special education and related services for children with disabilities. In exchange, a State must comply with certain conditions. *See Endrew F. ex rel. Joseph F. v. Douglas Cnty.*

*Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017). One such condition is that the State make a "free appropriate public education" (FAPE) available to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A). A FAPE must include the special education and related services "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399; *see* 20 U.S.C. §§ 1412(a)(4), 1414(d); *Board of Educ. v. Rowley*, 458 U.S. 176, 200–03 (1982).

In general, the IDEA requires a State to provide a FAPE "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). That means that "a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday." *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 986 (9th Cir. 2013). But the statute contains an exception: The obligation to provide a FAPE does not apply to children "aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B)(i). In other words, a State need not provide a FAPE to disabled students between the ages of 18 and 21 if the State does not provide a public education to nondisabled students in that same age range.

Washington, which accepts IDEA funding, requires each school district in the State to ensure "an appropriate educational opportunity for all children with disabilities between the ages of three and twenty-one, but when the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year." Wash. Rev. Code § 28A.155.020; *see also*

Wash. Admin. Code § 392.172A.02000(2)(c); *id.* § 392.121.031 (defining a school year as "the annual period commencing on the first day of September of one calendar year and ending the last day of August of the ensuing calendar year"). Thus, under Washington law, disabled students lose their eligibility for special education upon the end of the school year in which they turn 21; they do not continue to receive such services all the way to their 22nd birthday.

That provision of Washington law is consistent with the State's general age limit for public schools. In Washington, public schools are not open to nondisabled 21-year-olds. *See* Wash Rev. Code § 28A.225.160(1) ("[I]t is the general policy of the state that the common schools shall be open to the admission of all persons who are five years of age and less than 21 years residing in that school district."); *id.* § 28A.150.220(5)(a).

Although Washington public schools do not provide education to 21-year-olds, the State does offer two educational programs for students of that age. Washington has created a system of community and technical colleges, *see* Wash. Rev. Code § 28B.50.010 *et seq.*, which, as relevant here, offer two adult-education programs: High School+ and General Education Development (GED) preparation. The High School+ program, open to those who are at least 18 years old, allows students who demonstrate competency in specified subjects to receive a high-school diploma that is equivalent to those awarded by Washington secondary schools. The GED preparation classes prepare adults who are at least 16 years old to take the GED exam; most colleges and employers accept a GED certificate as equivalent to a high-school diploma.

Community and technical colleges charge tuition of $25 per quarter for the High School+ and GED programs, but that fee can be waived based on inability to pay. Between 2019 and 2022, approximately 40 percent of students received a waiver and thus paid no tuition. Nothing in the record suggests that either the High School+ or the GED program provides special education to students with disabilities.

N.D. and E.A. (collectively, the students) are Washington students. Each of them has been diagnosed with autism and is a "child with a disability" under the IDEA. 20 U.S.C. § 1401(3)(A) (defining "child with a disability"). In November 2022, N.D. brought this action, through his parents and guardians, against the Office of Superintendent of Public Instruction—the primary agency responsible for overseeing public K-12 education in Washington—and Chris Reykdal, its Superintendent (collectively, the Superintendent). In April 2023, N.D. filed an amended complaint, the operative pleading here, adding E.A. as a plaintiff and seeking injunctive and declaratory relief as well as compensatory education. The complaint alleges that the students have been denied access to a FAPE "solely because [they] . . . have exceeded the age cutoff the State of Washington has established."

The students sought provisional class certification and a preliminary injunction. The provisional class was to be composed of all disabled students in Washington "at risk of prematurely 'aging out' of their special education programs," while the preliminary injunction would have required the Superintendent to "keep those students in those programs during the pendency of this litigation until they reach the age of twenty-two." The Superintendent opposed both an injunction and class certification. He argued that

providing special education to 21-year-old disabled students "would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B)(i). The students conceded that Washington secondary schools are not open to 21-year-olds but argued that the High School+ and GED programs—which are open to 21-year-olds— mean that it is consistent with state law to provide public education to students of that age.

The district court denied a preliminary injunction. The court held that the students had not carried "their burden to demonstrate that they will suffer irreparable harm absent an injunction." The court acknowledged a declaration from E.A.'s mother stating "that when E.A.'s education was interrupted by the COVID-19 pandemic, he experienced mental health issues, lost social skills, and regressed academically," and predicting that he would experience "similar outcomes when his special education services end." But the court reasoned that the students had "not shown that E.A.—or any student—is likely to experience the same effects from a long-planned end to their special education services as they experienced from the unexpected and sudden school closures during the pandemic." It concluded that "there is a dearth of evidence in the record regarding the harms the students are expected to suffer and whether compensatory education services, if later granted, would be sufficient to remedy them." Having denied a preliminary injunction, the court denied the students' motion for class certification as moot.

The students moved for reconsideration, which the district court denied in relevant part. The court adhered to its conclusion that the students had not shown irreparable harm but added that they also could not show a likelihood of

success on the merits. The district court stated that this court's decision in *E.R.K.* defined a "free public education" as "one that is . . . provided at public expense, under public supervision and direction, *and without charge*." 728 F.3d at 988 (emphasis added). Because the High School+ and GED programs charge tuition of $25 per quarter, the district court concluded that the students were not likely to succeed "in showing that the IDEA's requirement that states provide a FAPE to disabled students until their twenty-second birthday is consistent with Washington's law or practice respecting the provision of public education."

The students appeal. *See* 28 U.S.C. § 1292(a)(1).

## II

We begin by considering whether we have jurisdiction. The Superintendent contends that we lack jurisdiction because no effective injunctive relief is available, making this preliminary-injunction appeal moot. We disagree.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. Sometimes, what begins as a concrete controversy ceases to be one during the course of the litigation—in other words, it becomes moot. The doctrine of mootness "ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). It requires that "an actual controversy . . . exist not only at the time the complaint is filed, but through all stages of the litigation." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)).

"If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (quoting *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999)). Thus, an appeal from the denial of a preliminary injunction is moot "when a court can no longer grant any effective relief sought in the injunction request." *Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016). For example, if "the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed." *Foster*, 347 F.3d at 746 (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002)).

As to one of the two named plaintiffs, the Superintendent is correct. N.D. turned 21 in the summer of 2022 and is now 22 years old. He therefore falls outside the scope of the IDEA and has no entitlement to relief under the statute, so the preliminary-injunction appeal is moot as to him. 20 U.S.C. § 1412(a)(1)(A); *see Honig v. Doe*, 484 U.S. 305, 318 (1988).

But as long as at least one plaintiff continues to present a live controversy, the appeal as a whole is not moot. *See Adamson v. Bowen*, 855 F.2d 668, 674 (10th Cir. 1988) ("The mootness doctrine requires that a live controversy continue to exist between defendant and at least some of the proposed class members."); *cf. Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) ("If at least one plaintiff has standing, the suit may proceed."). And E.A. has yet to turn 22; his 22nd birthday will not occur until July 2024. Before the district court, the Superintendent pointed out that E.A. was on track to graduate and earn a regular high school diploma in the summer of 2023, which would make him ineligible for

further special education. *See* 34 C.F.R. § 300.102(a)(3)(i) ("The obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma."). But E.A. had requested a due process hearing under the IDEA and invoked a statutory "stay-put" order to challenge the issuance of a diploma. A "stay-put" order ensures the continuation of current educational placements "during the pendency of any proceedings" to enforce IDEA rights. *See* 20 U.S.C. § 1415(j); Wash. Admin. Code § 392-172A-05125(1)(a); 34 C.F.R § 300.518(a). Accordingly, as the district court observed, E.A.'s school district ended his special education "not because of an anticipated diploma" but solely because of his age.

At oral argument, neither party was able to give a clear answer as to what has happened to E.A. in the months following the district court's ruling. It appears that E.A. may have received some kind of diploma but that the parties disagree about whether it constitutes a "regular high school diploma" as that term is used in 34 C.F.R. § 300.102(a)(3). "The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide." *Southern Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1134 (9th Cir. 2004). Whatever diploma E.A. may or may not have received, the Superintendent has not shown that it deprives us of the ability to provide effective relief. To the contrary, he conceded at oral argument that "the mootness question does not hinge on whether E.A. has received a diploma or a regular high school diploma." For our purposes, therefore, we cannot say that E.A. is in receipt of a regular high school diploma. Consequently, he remains eligible for special

education under the IDEA, and the appeal is not moot as to him.

The Superintendent argues, however, that the harm that the students "allegedly sought to prevent has already occurred and cannot be remedied by the preliminary injunction they seek." That is so, he says, because the motion for a preliminary injunction "focused on preventing exits from special education," and those exits have already occurred. He contends that at this point, the only relief that would benefit the students would be reinstatement, which they did not request in their motion for a preliminary injunction.

The Superintendent's reading of the students' requested relief is overly narrow. The harm that the students sought to prevent was their exclusion from special education before age 22. To be sure, the students' proposed injunction would have prohibited the Superintendent from allowing any school district "to terminate [special education] for any member of [the] provisionally certified class." That phrasing suggests a focus—understandable at the time—on ensuring that the students remained in their then-current placements. But the requested relief was not so limited. The students asked more generally that the Superintendent be barred "from enforcing the age-out provisions in" Washington law, which easily encompasses reinstating students who have been removed from special education under those provisions. And the proposed injunction would have required the Superintendent to ensure that each class member "continues to receive [special education] until the earlier of the resolution of this litigation or said class member reaches the age of twenty-two." If members of the class are no longer receiving special education, the only way to ensure that they receive special education until age 22

would be to reinstate them. Thus, although the motion did not expressly mention reinstatement, reinstatement is available relief within the scope of the request for an injunction. That is sufficient to keep this appeal from being moot. *See Akina*, 835 F.3d at 1010.

The Superintendent responds that reinstatement is no longer practical. As he explained to the district court, the "planning, budgeting, and hiring processes begin thirteen months in advance of the start of a new school year," which means that "there is not sufficient staff available to provide special education services for [the students] in the coming school year." He contends that developing plans for special education requires costly specialized services and resources, "including adaptive or assistive technology tailored to the student's disability." Thus, reinstatement would require "school districts across the state to commence an out-of-season and likely impossible task of hiring additional specialists for the 2023–24 school year."

That argument for mootness also fails. If an injunction would be costly or impractical, that might mean that it would not be in the public interest, suggesting that a district court *should* not grant relief. But it would not mean that "a court *can* no longer grant any effective relief," and therefore it would not make the appeal moot. *Akina*, 835 F.3d at 1010 (emphasis added). A preliminary-injunction appeal becomes moot when effective relief is unavailable, not when it is merely inadvisable.

The Superintendent has fallen far short of showing— indeed, he has not even attempted to show—that it would be impossible to provide relief to E.A. in particular. Instead, his arguments focus on the difficulty of providing relief to a larger, not yet certified, class of disabled students. To avoid

constitutional mootness, however, it is enough that one plaintiff be able to obtain effective relief. Because E.A., at a minimum, can still obtain relief, this appeal is not moot.

## III

That brings us to the merits of the appeal, which turns on whether the students are entitled to a preliminary injunction. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, plaintiffs must establish (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest." *Id.* at 20. We review the denial of a preliminary injunction for abuse of discretion. *Cascadia Wildlands v. Thrailkill*, 806 F.3d 1234, 1240 (9th Cir. 2015).

Before turning to the four factors set out in *Winter*, we note that the district court concluded that the requested injunction is a "mandatory injunction," as opposed to a "prohibitory injunction," so it is subject to a more demanding standard. To obtain a mandatory injunction, we have held, a plaintiff "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Whereas a prohibitory injunction aims at "simply maintaining the status quo," *id.* (quoting *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)), a mandatory injunction "orders a responsible party to 'take action,'" *id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Of course, "[t]here is no good blanket answer to the question of what the status quo is." *Labrador v. Poe ex rel. Poe*, 144

S. Ct. 921, 930 (2024) (Kavanaugh, J., concurring). Thus, as many courts have observed, "the distinction between mandatory and prohibitory injunctive relief is not meaningful." *United Food & Com. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998); *see League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (noting that a "'mandatory' injunction has not yet been devised that could not be stated in 'prohibitory' terms"); *see also Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).

Whatever the flaws of the mandatory–prohibitory distinction, "[w]e are nevertheless bound by circuit precedent to discern the line between mandatory and prohibitory injunctions." *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017). We assume without deciding that the students' requested injunction is mandatory. Even under the standards applicable to mandatory injunctions, the district court abused its discretion in denying an injunction.

## A

First, we consider the students' likelihood of success on the merits of their claim—"the most important" of the *Winter* factors. *Garcia*, 786 F.3d at 740. The IDEA's general requirement, set out in section 1412(a)(1)(A), is that a State make a FAPE available "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). The Superintendent concedes that Washington does not do that because it does not provide a FAPE to disabled 21-year-olds. But he argues that Washington is covered by the exception in section 1412(a)(1)(B)(i), which says that a State need not provide a FAPE to students "aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would

be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges." *Id.* § 1412(a)(1)(B)(i).

In construing section 1412(a)(1)(B)(i), we do not write on a blank slate. In *E.R.K.*, we considered a Hawaii law that denied public education to students 20 years old and older—including disabled students. 728 F.3d at 984–85. Hawaii attempted to defend its law by invoking section 1412(a)(1)(B)(i). Drawing on a Senate Committee Report, we looked to the statutory definition of the phrase "free appropriate public education" to construe "public education" in section 1412(a)(1)(B)(i), and we concluded that the provision "mean[s] that [a State] cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages." *Id.* at 987. We explained that "a 'free public education' is one that is 1) provided at public expense, under public supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education." *Id.* at 988.

Although Washington does not provide ordinary secondary schooling to 21-year-olds, *see* Wash Rev. Code § 28A.225.160(1), it does provide High School+ and GED programs. The Superintendent does not dispute that those adult-education programs constitute "public education." *But see K.L. v. Rhode Island Bd. of Educ.*, 907 F.3d 639, 655 (1st Cir. 2018) (Lynch, J., dissenting) (arguing that under the IDEA, "'adult education' is not 'public education,' but something else entirely"). He could not do so in light of *E.R.K.*, in which we held that Hawaii's Community Schools for Adults—which offered a competency-based diploma program similar to Washington's High School+ as well as a GED program similar to Washington's—were "a form of

public secondary education." 728 F.3d at 989; *see id.* at 989 n.5 ("[H]igh school diploma programs are paradigmatic examples of secondary education . . . .").

Instead, the Superintendent argues that the Washington programs do not constitute "*free* public education" because participants must pay tuition of $25 per quarter. The students point out that section 1412(a)(1)(B)(i) exempts a State from providing a FAPE to 21-year-olds only if doing so would be inconsistent with state law "respecting the provision of *public education* to children in those age ranges," without using the word "free." In other words, Congress used a different phrase to describe States' general obligation under the IDEA (providing a "free appropriate public education" to disabled students) than it did to describe what will trigger an obligation to provide a FAPE to disabled students older than age 18 (providing "public education" to nondisabled students of that age). Ordinarily, when Congress "uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:06, at 194 (6th ed. 2000)); *see K.L.*, 907 F.3d at 643 ("We are unpersuaded by [*E.R.K.*'s] analysis, which uses FAPE, a term of art that applies to 'special education and related services,' to define the general term 'public education.'" (citation omitted)).

Notwithstanding the force of that textual argument, we are bound by *E.R.K.*'s interpretation of section 1412(a)(1)(B)(i), and under that interpretation, a State "cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages." 728 F.3d at 987. The students argue that *E.R.K.*'s use of the word "free"

represents "nonbinding dicta," but we do not think it can be so lightly disregarded. *E.R.K.* involved a State's claim that it was covered by the exception in section 1412(a)(1)(B)(i), and to resolve the claim, we had to interpret that provision. Our statement of what the provision means is controlling circuit precedent. *See United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense."). We therefore agree with the Superintendent that the students can prevail only by showing that Washington offers "free public education" to nondisabled 21-year-olds.

But we also conclude that the students have made that showing. Tens of thousands of Washington students participate in the High School+ and GED programs at zero cost—receiving "free" education under any definition of that word—because they have been granted waivers of the $25 tuition fee. In the 2021–22 school year, for example, 24,332 students participating in High School+, GED, and other similar programs received a waiver. That number accounted for approximately 40 percent of all students enrolled in the adult-education programs. The record does not reveal the age distribution of the students, but there is no dispute that many are 21 years old or older. Thus, it cannot be said that providing free public education to 21-year-olds is "inconsistent with State law or practice." 20 U.S.C. § 1412(a)(1)(B)(i). To the contrary, Washington "in fact provides 'free public education' to nondisabled students" of age 21 and older. *E.R.K.*, 728 F.3d at 987.

Under *E.R.K.*, that makes section 1412(a)(1)(B)(i) inapplicable to Washington. As we explained in that case, if States "wish to shut the door to students" based on the students' age, "that is their prerogative—but they must shut them to *all* students, regardless of disability." 728 F.3d at 992. The record here shows that Washington does not shut the door to free public education to all 21-year-olds—only disabled ones. The IDEA does not permit it to do so.

Our conclusion accords with the decisions of other courts of appeals that have considered similar programs. For example, in *K.L.*, the First Circuit held that Rhode Island had to provide disabled students access to a FAPE until they turned 22 because the State offered public adult-education programs like those at issue here. 907 F.3d at 650–53. That was so, the court held, even though "most students pay a portion of the cost of such programs." *Id.* at 652 n.12. Likewise, in *A.R. v. Connecticut State Board of Education*, the Second Circuit held that Connecticut could not invoke section 1412(a)(1)(B)(i) to deny special education to disabled 21-year-olds because it offered adult-education programs, including GED programs, to students of that age. 5 F.4th 155, 164–67 (2d Cir. 2021). Although the GED class itself was offered at no charge, taking the GED exam required a $13 fee, subject to waiver in cases of inability to pay. *Id.* at 165. But that fee structure did not make the provision of a FAPE to 21-year-olds "inconsistent with State law or practice." The same is true here.

We conclude that the students have a high likelihood of success on the merits of their claim.

## B

Second, we consider whether the students would suffer irreparable harm in the absence of a preliminary injunction.

*Winter*, 555 U.S. at 20. The record shows that the students will indeed be irreparably harmed by the denial of access to special education. E.A.'s mother described the harm that E.A. would suffer: In a declaration, she stated that "E.A. suffered extraordinary regression during the COVID-19 related school closures" and would suffer similarly if his access to special education were prematurely denied. Specifically, the loss of access to special education led him to exhibit "clear signs of depression"; made him unable to control his emotions and mood; led him to begin "self-harming," suffer emotional breakdowns, behave violently and break items, and lose "significant communication skills" and social skills; and caused his general academic skills to deteriorate.

We have previously found that similar disruptions of special education cause irreparable harm, and we conclude that the district court erred in determining that E.A. has not demonstrated a likelihood of irreparable harm here. *See N.D. ex rel. Parents Acting As Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112–13 (9th Cir. 2010) (affirming a finding of irreparable harm where plaintiff had been deprived of special education and consequently "demonstrated regression in his behavior, increased difficulty with activities, and outbursts of frustration and violence"). As one court has observed, "[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm." *Cosgrove v. Board of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001); *see id.* at 392–93 (collecting cases). Indeed, even the State of Washington has recognized the potential harm to E.A. The State has determined that he is entitled to extended school year services, which, under state

law, are available only to students who would experience regression in the absence of continuous educational services. *See* Wash. Admin. Code § 392-172A-02020(7)(a) (defining "[r]egression" as "significant loss of skills or behaviors if educational services are interrupted").

Before the district court, the Superintendent did not dispute that harm would in fact befall E.A. in the absence of an injunction. Instead, he contended that any harm "can be rectified by compensatory education and is therefore not irreparable." But the promise of compensatory education is no answer to the claim of irreparable harm arising from the denial of special education. In *N.D.*, we upheld the district court's finding of irreparable harm to students who missed just 17 days of school—despite declarations from school officials that "ameliorative steps" would be taken. 600 F.3d at 1107–08, 1113; *see also Cosgrove*, 175 F. Supp. 2d at 393 (describing compensatory education in the aftermath of a wrongful denial of special education as a "pyrrhic victory"). Nothing in the record here suggests that compensatory education would be adequate to remedy the harm suffered from an interruption of special education.

## C

Finally, we consider the balance of hardships and the public interest. *Winter*, 555 U.S. at 20. If an injunction is not granted, the students will suffer the irreparable harm described above. Conversely, if an injunction is granted, the hardship that the Superintendent will suffer is the expense of continuing the students' education. We conclude both that the balance of hardships tips in the students' favor and also that an injunction would be in the public interest.

As we have explained, the Superintendent argues that it would be costly and impractical to reinstate students who

have aged out of special education under Washington law. Although the district court agreed with the Superintendent's concerns regarding the costs and practicability of reinstating the students, we think the Superintendent's claims of hardship are overstated.

First, the IDEA already makes a "stay-put" order available to any student who receives a FAPE. 20 U.S.C. § 1415(j). Such an order ensures the continuation of current educational placements "during the pendency of any proceedings" to enforce IDEA rights. *Id.* The existence of that mechanism is strong evidence that the Superintendent would not suffer undue hardship should the injunction be granted—because something very similar is granted to students as of right should they ask for the entry of a stay-put order.

Second, the IDEA requires a school district to immediately enroll and implement the existing, or comparable, plan for special education for a disabled student who moves to the district during the school year—no questions asked. 20 U.S.C. § 1414(d)(2)(C). It is unclear how such newly arrived students can be accommodated, but allowing these previously enrolled students to re-access special education could not be. The Superintendent asserts that the burden of accommodating "an occasional transfer student . . . is incomparable to the unexpected burden of accommodating an entire provisional class," but that claim is belied by his acknowledgement that "there are likely fewer than 20 students who will exit special education this year solely due to turning 21 before September."

More fundamentally, the Superintendent's argument fails because the IDEA sets out a categorical requirement that States provide special education to disabled students

within the statute's scope. The statute says that a State receiving IDEA funding must "ensure" that "[a] free appropriate education is available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). It does not qualify that requirement with "reasonably," "to the extent practicable," or any other language that might invite consideration of costs. *See Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 467–71 (2001). Put another way, Congress has already done the relevant balancing of interests and resolved that balance in favor of ensuring that disabled students receive a FAPE. *See K.L.*, 907 F.3d at 652 ("It is simply not a response to the requirement of equality to say that students with disabilities may properly be afforded less education because equal treatment will be too costly."); *see also E.R.K.*, 728 F.3d at 992. Ensuring compliance with the IDEA is in the public interest. *See N.D.*, 600 F.3d at 1113 ("[I]t is obvious that compliance with the law is in the public interest . . . .").

\*     \*     \*

We conclude that the students meet all four of the *Winter* requirements, so we vacate the district court's order and remand for further proceedings including the entry of a preliminary injunction. We do not consider whether the proposed class warrants certification under Federal Rule of Civil Procedure 23. Because the district court has not previously addressed that issue, we leave it to be resolved on remand.

**VACATED and REMANDED.**