FILED

01/17/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0512

DA 24-0512

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 9

WILLIAM W. MERCER,

      Petitioner and Appellee,

  v.

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,
CHARLES BRERETON, in his official
capacity as Director of the Montana
Department of Public Health and Human Services,
NICOLE GROSSBERG, in her official
capacity as Administrator of the Child and
Family Services Division of the Montana Department
of Public Health and Human Services,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2024-500
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          J. Stuart Segrest, Christensen & Prezeau, PLLP, Helena, Montana

      For Appellee:

          William W. Mercer, Pro Se, Billings, Montana

                      Submitted on Briefs:  November 20, 2024
                              Decided:  January 17, 2025

Filed:

                _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Montana Department of Public Health & Human Services (DPHHS or the Department) appeals the order of the First Judicial District Court, Lewis & Clark County, which granted a mandatory preliminary injunction requiring the Department to make available assertedly privileged information withheld from Montana State Representative William W. Mercer (Rep. Mercer) during his review of Department child abuse and neglect case records authorized by statute. We restate the issue as follows:

> *Whether the District Court abused its discretion by granting a mandatory preliminary injunction requiring DPHHS to disclose materials to a Montana legislator conducting a statutorily authorized review of a child abuse and neglect case.*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parties stipulated to the facts stated in the affidavit filed by Rep. Mercer in support of his motion for a preliminary injunction. Rep. Mercer is a member of the Montana House of Representatives, who during this proceeding represented House District 46, and following his reelection in November 2024, represents House District 52 in the 2025 legislative session. Acting in his legislative capacity, Rep. Mercer requested review of certain records pursuant to § 41-3-205, MCA. This statute requires that child abuse and neglect "case records" be kept confidential but also provides for disclosure of such records upon satisfaction of statutory criteria, including, at issue here, to a Montana legislator. Section 41-3-205(4)(a), MCA. A legislator is provided access to such records for a period

2

of time "limited to 6 months from the date the written request to review records was received by the department." Section 41-3-205(4)(c), MCA.

¶4 On March 5, 2024, Rep. Mercer sent a letter to Charles Brereton (Brereton), the Director of the Department, requesting review of records pertaining to a "Valley County CPS matter involving a youth." The parties agreed that Rep. Mercer satisfied the threshold requirements under § 41-3-205, MCA, for review of the case records, which, in relevant part, require that the requesting member of the legislature "receives a written inquiry regarding a child and whether the laws of the United States or the state of Montana that protect children from abuse or neglect are being complied with or whether the laws need to be changed to enhance protections for children," § 41-3-205(4)(a)(i), MCA, and "submits a written request to the department requesting to review the records relating to the written inquiry," which includes "a copy of the written inquiry, the name of the child whose records are to be reviewed, and any other information that will assist the department in locating the records." Section 41-3-205(4)(a)(ii), MCA.

¶5 On March 15, 2024, Rep. Mercer signed a confidentiality agreement, satisfying a statutory requirement, and the Department provided Rep. Mercer with what it described as the case record "as kept by child protection services." Upon review of the documents provided, Rep. Mercer requested additional records that he believed were required to be produced under § 41-3-205, MCA, including emails, text messages, case notes, memorandums, and all other communications "generated by or received by the Department's employees and officers" during the relevant investigation and litigation. The

Department denied the request, maintaining the statute required production only of the more formal "case record," which it initially had provided to Rep. Mercer.

¶6 On July 29, 2024, Rep. Mercer filed a Petition for Writ of Mandamus and Declaratory and Injunctive Relief. The Department initially maintained that it had provided Rep. Mercer with the records required under § 41-3-205, MCA, and that the additional records he had requested fell outside the scope of the statute. However, in August 2024, the Department's Chief Legal Counsel altered positions and indicated the Department would provide the additionally requested records, except for attorney-client privileged material.

¶7 On August 19, 2024, Rep. Mercer filed motions for a preliminary injunction and an emergency hearing. The Department filed a notice of waiver and motion to stay the six-month time limit imposed upon a legislator's review of requested records under § 41-3-205(4)(c), MCA. On August 27, 2024, the District Court held a hearing on the preliminary injunction, with Rep. Mercer appearing *pro se*. After receiving argument, the District Court orally denied the Department's motion to stay, and granted Rep. Mercer's requested mandatory preliminary injunction, reasoning that:

> Representative Mercer is entitled to review at the Department's Helena Office no later than September 5, 2024 all pertinent child "[r]ecords, including case notes, correspondence, evaluations, videotapes, and interviews, . . . unless disclosure of the records is determined to be detrimental to the child or harmful to another person who is a subject of information contained in the records." Mont. Code Ann. § 41-3-205(3) (2023). Since Representative Mercer is a Montana legislature member, the Department must disclose the records described in Mont. Code Ann. § 41-3-205(3) in its possession and control since, there is no dispute, that he has satisfied all mandatory requirements to review the records. See Mont.

4

Code Ann. § 41-3-205(4). Such records include all Department claimed attorney client privileged information (unless disclosure of any records, including the claimed privileged documents is determined to be detrimental to the child or harmful to another person who is a subject of information contained in the records) as reflected in its three privilege logs attached to the Department's August 26, 2024 "Response and Objection to Motion for Emergency Hearing."

Noting "the enormous sanctity afforded to the attorney-client privilege and the irreparable harm disclosure could have on the Department and/or Executive Branch," the District Court imposed confidentiality protections beyond the statutory language by precluding Rep. Mercer, in accordance with a stipulation between the parties, from "disclosing, in any shape, manner or form, in any venue, public or private, any information contained in the documents listed in the Department's three privilege logs following [Rep. Mercer's] review."

¶8 On August 28, 2024, the District Court entered a written order, and the Department moved to stay both the oral order and the written order pending appeal, arguing that "[d]ue to the pending deadline, and the inability to undo Representative Mercer's review of documents once allowed," the order should be stayed pending the Department's appeal of the injunction order. The District Court denied this motion. The Department then filed, in this Court, an "Emergency Motion for Immediate Stay" of the mandatory injunction order, and "Appellant's Rule 22(2) Motion for Stay." This Court held that, "without comment or prejudice to the question of whether the District Court erroneously granted the subject relief," the District Court erred by denying a stay of judgment pending appeal, and ordered that the District Court's injunction order be stayed pending exhaustion of the Department's

5

appeal. This Court further ordered that the six-month time limit for a legislator's review under § 41-3-205(4)(c), MCA was "tolled and held in abeyance regarding the request at issue."

## STANDARD OF REVIEW

¶9 An order granting a preliminary injunction is immediately appealable. M. R. App. P. 6(3)(e). "We review a district court's grant or denial of a preliminary injunction for manifest abuse of discretion." *Stensvad v. Newman Ayers Ranch, Inc.*, 2024 MT 246, ¶ 8, 418 Mont. 378, 557 P.3d 1240 (citing *Montanans Against Irresponsible Densification, LLC v. State*, 2024 MT 200, ¶ 8, 418 Mont. 78, 555 P.3d 759 (*MAID*)). "A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *Planned Parenthood of Mont. v. State*, 2022 MT 157, ¶ 5, 409 Mont. 378, 515 P.3d 301 (citation omitted). "A manifest abuse of discretion is one that is obvious, evident, or unmistakable." *Stensvad*, ¶ 8 (citation omitted). If the district court's decision on a preliminary injunction was based upon legal conclusions, this Court will review those conclusions for correctness. *MAID*, ¶ 8.

## DISCUSSION

¶10 *Whether the District Court abused its discretion by granting a mandatory preliminary injunction requiring DPHHS to disclose materials to a Montana legislator conducting a statutorily authorized review of a child abuse and neglect case.*

¶11 The Department argues that the District Court erred in granting the preliminary injunction by failing to maintain "the status quo by staying the [six-month] deadline while

6

the matter proceeded on an expedited basis to ensure review prior to the legislative session." The Department argues the District Court misinterpreted the legislator disclosure provisions and that, "[p]roperly interpreted as a matter of law, the statute does not circumvent the attorney-client or work-product privileges or permit review of documents outside the case record." Finally, the Department contends the District Court "artificially created the threat of irreparable injury by determining relief had to be granted by the six-month deadline," and improperly resolved the ultimate issue presented by the parties.

¶12 The Department is correct that "it is well established that a court does not decide the merits of a claim in a preliminary injunction proceeding." *Netzer Law Office, P.C. v. State*, 2022 MT 234, ¶ 15, 410 Mont. 513, 520 P.3d 335. Likewise, appellate review of a district court's grant of injunctive relief is meant to be "limited and deferential" and "does not extend to the underlying merits of the case." *Montana v. State*, 2024 MT 227, ¶ 14, 418 Mont. 226, 557 P.3d 471 (citing *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1184 (9th Cir. 2024) and *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)). That is a challenging task here, where the granting of leave for Rep. Mercer to review documents nearly takes the case to its final conclusion. However, the District Court acknowledged that its order did not resolve "the ultimate merits of the case" and imposed restrictions on Rep. Mercer's use of the information beyond those provided in statute. Our decision here recognizes, as it must under the standards, that the ultimate resolution of the breadth of Rep. Mercer's entitlement to records under the statute, including claimed privileges subject to in camera review, will be resolved in the final

7

adjudication of the matter. Our review is confined to whether the District Court manifestly abused its discretion in permitting Rep. Mercer's review to proceed under the governing preliminary injunction standards.

¶13    "Montana's preliminary injunction statute requires an applicant to establish four factors," including (a) the applicant is likely to succeed on the merits, (b) the applicant is likely to suffer irreparable harm in the absence of preliminary relief, (c) the balance of equities tips in the applicant's favor, and (d) the order is in the public interest. *MAID*, ¶ 10; § 27-19-201(1), MCA; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). The "test is conjunctive." *MAID*, ¶ 12. "Unless it is clear that an applicant fails to raise serious questions going to the merits, a district court should likewise consider and address each of the remaining factors." *Stensvad*, ¶ 29.

**Likelihood of Success on the Merits**

¶14    Rep. Mercer requested and the District Court granted a mandatory preliminary injunction. When the requested preliminary injunctive relief "orders a responsible party to take action" as opposed to "simply maintaining the status quo," the preliminary relief is accurately characterized as mandatory and as such is "subject to a more demanding standard." *N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024) (distinguishing a "mandatory injunction" from a "prohibitory injunction"). Under the first factor, "[t]o

obtain a mandatory injunction, we have held, a plaintiff 'must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed.'" *Reykdal*, 102 F.4th at 992 (quoting *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)) (emphasis in original).

¶15 The Department challenges the District Court's failure to maintain the status quo, but Rep. Mercer seeks a form of relief that "goes well beyond simply maintaining the status quo *pendente lite*." *Garcia*, 786 F.3d at 740 (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)). Rep. Mercer seeks an order mandating the Department to affirmatively permit review of documents it has refused to allow. *See Garcia* 786 F.3d at 740 (requiring Google to remove a film from certain websites was correctly treated as a mandatory injunction as it ordered the party to take action); *see also Stanley*, 13 F.3d at 1320 ("[A]n injunction compelling USC to install Coach Stanley as the head coach of the women's basketball team and to pay her $28,000 a year more than she received when her employment contract expired" did not simply maintain the status quo and therefore was correctly categorized as a preliminary mandatory injunction.). "Mandatory injunctions are most likely to be appropriate when 'the status quo . . . is exactly what will inflict the irreparable injury upon complainant.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)). Here, the status quo, whereby the Department will *not* provide all records to Rep. Mercer for review, is what is inflicting the asserted injury—the inability of Rep. Mercer to timely review records designated for

9

review by the statute. Thus, because such mandatory injunctive relief is generally "disfavored," the burden under the first prong increases and the moving party "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original). Here, the District Court applied this heightened standard, reasoning that Rep. Mercer demonstrated that "controlling Montana Law and [] the stipulated facts 'clearly favor his position' as a Montana legislature member."

¶16 Although we do not provide an ultimate interpretation of the governing statutes here, we are mindful in this preliminary posture of the governing standards. "We interpret a statute first by looking to its plain language." *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898 (citing *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003). A court's role is to ascertain what is contained within the statute, "not to insert what has been omitted or to omit what has been inserted." *Fox*, ¶ 18 (quoting § 1-2-101, MCA). "The duty of this Court is to 'read and construe each statute as a whole' so that we may 'give effect to the purpose of the statute.'" *Fox*, ¶ 18 (quoting *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819).

¶17 Title 41, chapter 3, MCA, requires that "case records of the department and its local affiliate, the local office of public assistance, the county attorney, and the court concerning actions taken under this chapter," as well as "all records concerning reports of child abuse and neglect" must be kept confidential. Section 41-3-205(1), MCA. These "records" are further described as "including case notes, correspondence, evaluations, videotapes, and

interviews." Section 41-3-205(3), MCA. However, upon satisfaction of the requirements in § 41-3-205(4)(i)–(iii), MCA[1], these "records described in subsection (3) must be disclosed to a member of the United States congress or a member of the Montana legislature," § 41-3-205(4), MCA, "unless disclosure of the records is determined to be detrimental to the child or harmful to another person who is a subject of information contained in the records." Section 41-3-205(3), MCA. The District Court reasoned that Rep. Mercer had established "beyond a reasonable doubt" his entitlement to the requested records under these statutes.

¶18 The Department contends that, although Rep. Mercer met the requirements for disclosure under § 41-3-205(4), MCA, his interpretation of the legislator exception constitutes "an open ended discovery mechanism [that] is not supported by the statutory framework and thus the law does not clearly favor his position." The Department reasons that the overarching purpose of § 41-3-205, MCA is to provide confidentiality for *case records*, and thus the references to other documents within § 41-3-205(3), MCA and § 41-3-205(4), MCA, should be limited to those documents found within the litigation case

---

[1] "[T]he [legislative] member receives a written inquiry regarding a child and whether the laws of the United States or the state of Montana that protect children from abuse or neglect are being complied with or whether the laws need to be changed to enhance protections for children; [] the member submits a written request to the department requesting to review the records relating to the written inquiry. The member's request must include a copy of the written inquiry, the name of the child whose records are to be reviewed, and any other information that will assist the department in locating the records. [] [B]efore reviewing the records, the member: [] signs a form that outlines the state and federal laws regarding confidentiality and the penalties for unauthorized release of the information; and [] receives from the department an orientation of the content and structure of the records." Section 41-3-205(4), MCA.

record, which would not include other documents and those that are attorney-client privileged. The Department argues that the attorney-client privilege is an implied exception to the disclosures authorized by this statute, for the same reasons this Court discussed in *Nelson*, and thus that decision should be analogized to the disclosure requirements here. *See Nelson v. City of Billings*, 2018 MT 36, 390 Mont. 290, 412 P.3d 1058.

¶19 The District Court reasoned that this argument was "a request that the Court insert what has been omitted in Mont. Code Ann. § 41-3-205(3)" because "[t]he Legislature specifically excluded from a Mont. Code Ann. § 41-3-205(4) request only those records that are 'detrimental to the child or harmful to another person who is a subject of information contained in the records.'" Indeed, a reading of the plain language provides a straightforward process, that if the requirements in § 41-3-205(4)(a), MCA, are satisfied by a Montana legislator, then the "[r]ecords, including case notes, correspondence, evaluations, videotapes, and interviews," § 41-3-205(3), MCA, "must be disclosed," § 41-3-205(4), MCA, "unless [those records are] otherwise protected by this section or unless disclosure of the records is determined to be detrimental to the child or harmful to another person who is a subject of information contained in the records . . . ." Section 41-3-205(3), MCA. No language otherwise limiting the disclosure to litigation case records and documents within those records is provided by the statute.

¶20 As noted, the District Court thereafter stated that, "[n]otwithstanding, however, neither the Court, the Department nor Representative Mercer have lost sight of the

enormous sanctity afforded to the attorney-client privilege and the irreparable harm disclosure of such protected and confidential information could have on the Department and/or Executive Branch," leading it to impose additional confidentiality restrictions upon Rep. Mercer's use of the information he would review for purposes of the preliminary injunction order.

¶21 Likewise, we need go no further for purposes of this appeal. "The attorney-client privilege has deep roots in the American legal system." *Nelson*, ¶ 23. "The purpose of this privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Nelson*, ¶ 23 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981)). While *Nelson* focused on application of the attorney-client privilege in a Right to Know case, the general comments on the historical importance of the privilege still hold true. If attorney-client information must be turned over, the policy goals *Nelson* discussed—that the attorney-client privilege is focused on encouraging "full and frank communication" thereby promoting "broader public interests"—must be carefully respected. *Upjohn Co.*, 449 U.S. at 389, 101 S. Ct. at 677.

¶22 Section 41-3-205, MCA, provides that "[r]ecords may be disclosed to a court for in camera inspection if relevant to an issue before it." Section 41-3-205(2), MCA. Therefore, the Department may, during the merits proceeding, claim that certain records are privileged and seek an in camera review. The District Court's rulings on those documents will

thereafter be subject to review on appeal. However, Rep. Mercer has demonstrated that his position is "clearly favor[ed]." *Garcia*, 786 F.3d at 740.

**Irreparable Harm**

¶23 "Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely, not merely speculative, in the absence of an injunction." *MAID*, ¶ 15 (internal citations omitted). "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *MAID*, ¶ 19 (citing *Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76) (emphasis in original). The Ninth Circuit, among other federal circuits, has applied this prong to mandatory relief, holding that, "[i]n general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).

¶24 The District Court concluded that Rep. Mercer had "overwhelmingly satisfied" the requirement of a showing of irreparable harm. The District Court cited to the underlying purpose of § 41-3-205(4), MCA, namely the statute's "enhanced legislature transparency" meant to "proactively allow [Montana Legislature members] to perform [their] necessary and lawful due diligence inquiry." Without full compliance with the disclosure obligations, the District Court reasoned that the goal of transparency is rendered meaningless. Further,

14

regarding timing, Rep. Mercer argued, and the District Court agreed, that "[w]ithout the relief ordered, [Rep. Mercer] had no hope of completing his review before the six-month deadline passed, which would have caused irreparable harm."

¶25 The Department's briefing, though opposing relief, acknowledges the timing issue as one that could cause irreparable harm, stating "there is no risk of injury to Rep. Mercer, certainly none that is irreparable, as long as the determination whether he is entitled to view the privileged documents *is made in time for consideration in the upcoming legislative session*." (Emphasis added.) Thus, irreparable injury without issuance of the mandatory injunction is clear—the legislative session is now underway, and the review must occur. Even with this Court's imposition of a stay of the time limit, the same harm Rep. Mercer alleged in his briefing remains—"[t]he inability to timely review the records encompassed by § 41-3-205(4), MCA will impair [Rep. Mercer's] ability to understand the decisions made by the Department and to confer with [DPHHS] on policy changes, as contemplated by § 41-3-205(4)(a)(i)"; and "[l]egislation that is not drafted in January or February of 2025 will not survive the transmittal deadline for general bills . . . ."

¶26 While a mandatory injunction raises the standard here, and Rep. Mercer's burden, we conclude the District Court did not abuse its discretion in concluding this factor was properly satisfied.

**Balance of Equities**

¶27 The third factor asks whether "the balance of equities tips in the applicant's favor." Section 27-19-201(1)(c), MCA. The District Court concluded that Rep. Mercer

15

sufficiently showed under a plain reading of the statute, and his position in the Montana Legislature, that he had "an absolute statutory right to the records he requested in March 2024 subject to the limitations set forth in [§ 41-3-205(4), MCA]," which ultimately tipped the balance of equities in Rep. Mercer's favor. The District Court also considered that the stipulation of confidentiality between the two parties would give protection to asserted attorney-client information.

¶28 Rep. Mercer's injury would be his inability to review information necessary to respond to the inquiry he received about the case, and to do so in time to also seek any legislative changes, despite having a statutory right to review the documents. The Department, on the other hand, could be injured by the release of privileged information, which DPHHS correctly points out could not be undone. Here, the stipulation forbidding any disclosure of information greatly minimizes the Department's potential injury, whereas the commencement of the legislative session only expands the harm caused to Rep. Mercer without a mandatory injunction. Therefore, we agree that the balance of equities is in favor of Rep. Mercer's position.

**Public Interest**

¶29 "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *MAID*, ¶ 21 (citing *Winter*, 555 U.S. at 24, 129 S. Ct. at 376-77). "The public interest factor is another way of inquiring whether there are policy considerations that bear on whether to

grant an injunction." *Cross v. State*, 2024 MT 303, ¶ 53, 419 Mont. 290, ___ P.3d ___ (internal citations omitted).

¶30 The Department offers little or no argument on this factor. The District Court concluded that, under a plain language reading of the statute, Rep. Mercer "by his very March 2024 record request, is serving the public's interest as a Montana legislature member," and that therefore "[t]he Department's refusal to comply with Representative Mercer's request is not, in [the District Court's] view, in the public's interests." As such, the District Court concluded that the preliminary mandatory injunction was clearly in the public's interest. While the policy behind protection of attorney-client communications also implicates the public interest, the stipulation entered into between Rep. Mercer and the Department and ordered by the District Court, and the process discussed above, ensures that the public interest in facilitating statutory disclosure as the legislative session begins is greater than the potential harm that may come from the disclosure of attorney-client information that is now subject to the court-ordered confidentiality requirements. Therefore, we conclude the District Court did not abuse its discretion in finding the injunction was in the public interest.

¶31 In conclusion, we hold that the District Court did not err in applying the factors governing issuance of a preliminary injunction, here a mandatory injunction, and did not abuse its discretion by granting Rep. Mercer relief under the parameters of its order. Further, we hold that the scope of this preliminary injunction provided appropriate preliminary relief and did not serve as a final ruling on the merits.

¶32   Affirmed.

/S/ JIM RICE

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA