DA 24-0422

FILED

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0422

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 148

STEVEN CORRY STEPHENSON, as
trustee of the Steven Corry Stephenson Trust,
amended and reinstated September 20, 2020,

        Plaintiff, Counterclaim Defendant,
        and Appellant,

     v.

LONE PEAK PRESERVE, LLC,
an Ohio Limited Liability Company,
and DOES 1-10,

        Defendants, Counterclaimants,
        and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV-21-1297C
                Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Michael L. Rabb, The Rabb Law Firm, PLLC, Bozeman, Montana

      For Appellees:

          Kelsey Bunkers, E. Lars Phillips, Elizabeth L. Orvis, Crowley Fleck PLLP, Bozeman, Montana

                    Submitted on Briefs:  April 2, 2025

                             Decided:  July 8, 2025

Filed:

                _____
                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Steven Corry Stephenson, as trustee of the Steven Corry Stephenson Trust, amended and reinstated September 20, 2020, appeals a District Court order granting a preliminary injunction in favor of Lone Peak Preserve, LLC, regarding an access dispute over Stephenson's property. Finding no manifest abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Stephenson and Lone Peak own adjacent parcels of land near Big Sky, Montana. Eric Schertel is a member of Lone Peak, LLC. Both lots were created by the same certificate of survey (COS 1754), dated March 22, 1993, and recorded the same day in the Gallatin County Clerk and Recorder's Office.[1] COS 1754 depicts a road (Skywood Road) through the properties labeled "60′ ROAD EASE. (TYP)[.]" An affidavit of dedication dated May 1, 1993, and later recorded (as Document No. 264854) states that the "60′ access shown on [COS] 1741 and 1754, located in Section 6, Township 7 South, Range 4 East, M.P.M., Gallatin County, Montana . . . [is] hereby granted as [an easement] for ingress, egress and utilities for the use and benefit of all owners contained within" COS 1754. COS 1754A (dated and recorded on April 19, 1994) relocated part of the 60-foot easement to reflect part of the road as it was constructed. COS 1754A depicts a road through the properties labeled "60′ ROAD EASEMENT (TYP)[.]" The road depicted in COS 1754 and COS 1754A crosses Lot 13 and ends in a circle that overlaps part of Lot 11.

---

[1] Any document that is stated as "recorded" in this Opinion was recorded in the Gallatin County Clerk and Recorder's Office, unless otherwise noted.

2

COS 1754A did not relocate the circle, which is one of the disputed areas in this case (the alleged cul-de-sac).



¶3     Stephenson currently owns Lot 11, and Lone Peak owns Lot 13. Phillip Smith previously owned both Lot 11 and Lot 13. In December 2004, Smith conveyed Lot 13 to Lone Peak by warranty deed recorded in January 2005 (the Smith-Lone Peak Deed). The Smith-Lone Peak Deed also conveyed a 30-foot easement for access and utilities across Lot 11, COS 1754A, and attached an Exhibit A locating and describing the easement. Exhibit A provided the following legal description of the access and utility easement:

> A 30.00-foot-wide easement for access and utility purposes for the benefit of Lot 13, Certificate of Survey No. 1754A, over[,] under, and across a portion of Lot 11, Certificate of Survey No. 1754A according to the plat thereof, on file and of record in the office of the Clerk and Recorder, Gallatin County, Montana . . . . Centerline of said easement is described as follows:
>
> Commencing at the northwest corner of said Lot 13; thence easterly 105° 53' 36", assumed azimuth from north, 556.29 feet along the north line of said Lot 13, to the point of beginning of said centerline; thence northeasterly 057°

57' 34" azimuth 142.70 feet; thence northwesterly 322° 49' 47", azimuth 85.00 feet, and there terminating.

It also included an image, a part of which is shown here:



¶4     In August 2010, Smith conveyed Lot 11 to Stephenson by warranty deed, promptly recorded (the Smith-Stephenson Deed).  The Smith-Stephenson Deed did not explicitly mention or describe the reserved 30-foot easement from the Smith-Lone Peak Deed.  It referenced the official plat filed with the county recorder's office and stated that the Stephenson Property was subject to "reservations and restrictions in . . . prior conveyances, . . . and all building and use restrictions, covenants, easements, agreements, conditions and rights of way of record and those which would be disclosed by an examination of the property."

¶5     In February 2013, Stephenson executed and recorded an access and utility easement agreement between himself and Wanda K. Smith (the Lot 12 owner who is not a party to this litigation).  Relevant here, the document stated that it "is also the purpose of this

4

agreement for the owner of said Lot 11 to provide the owner of said Lot 13 an additional access easement area. The easements are shown on the attached 'Exhibit A', which by this reference is made a part of this document." Exhibit A to the 2013 Easement Agreement shows a 30-foot-wide access and utility easement "across Lot 11 for use of Lot 13 per Doc. No. 2176107[.]" It similarly shows the "60′ Road Easement Per COS 1754A" but does not show any circle at the juncture of the three lots. Doc. No. 2176107 is the Smith-Lone Peak Deed that contains the exhibit and explicit language regarding the 30-foot access easement over Lot 11.

¶6    At some time in 2020, Lone Peak began constructing a residence on Lot 13. Lone Peak traversed a portion of Lot 11 to access Lot 13. In December 2021, Stephenson sued Lone Peak for trespass and declaratory judgment, alleging in part that Lone Peak's current utilities and proposed driveway were outside the easement area on Stephenson's property (Lot 11). About six months later, Lone Peak filed a counterclaim for interference with easements, trespass, and declaratory judgment. Both parties filed motions for summary judgment that remained pending before the District Court when this appeal was submitted to this Court. Between the spring of 2022 and August 2023, Stephenson placed landscape boulders and a log "near the outlet of Lone Peak's current access to its property[,]" moved the landscape boulders and log back onto his property, but then placed additional landscape boulders "near the outlet of Lone Peak's current access to its property[,]" and installed a speed bump across Lone Peak's current access to its property.[2]

---

[2] Although the District Court made findings that Stephenson placed boulders, a log and the speed bump, it did not make findings of fact in its order of the specific dates that the interferences or

5

¶7     Lone Peak filed a motion for a temporary restraining order and preliminary injunction in July 2023, requesting that the court enjoin Stephenson from installing any improvements or structures and from interfering with or obstructing the easements during litigation and order Stephenson to remove any other interferences or obstructions. Stephenson opposed, arguing that neither access easement claimed by Lone Peak (the 30-foot access easement from the Smith-Lone Peak deed or the cul-de-sac access easement from the certificates of survey) was valid and, in the alternative, that he did not unreasonably interfere with Lone Peak's use. Stephenson asserted that the installed landscaping improvements would not impede Lone Peak's use of the 2013 Access Easement or the driveway. Relevant here, Stephenson describes Lone Peak's Driveway as a smaller, graveled portion constructed in 2020 that Lone Peak used to access its property. Maps submitted by Stephenson's surveyor show that the Driveway mostly lies within the alleged 30-foot and cul-de-sac easements but that a small portion falls outside the 30-foot easement and cul-de-sac.

¶8     The District Court granted Lone Peak's request for a temporary restraining order. The parties presented additional evidence at a preliminary injunction hearing on October 10, 2023. The District Court heard testimony from Eric Schertel (Lone Peak's member), Stephenson, and Michael Lapp (a surveyor hired by Stephenson) and received

---

obstructions occurred. This Court uses these dates from Stephenson's own declaration in his opposition to the preliminary injunction and his testimony at the preliminary injunction hearing, as they are relevant to the status quo analysis, but otherwise leaves the final findings of fact for the merits. *See Flying T Ranch, LLC*, ¶ 39 (Conclusive factual and legal statements—beyond those necessary to preserve the status quo—are "reserved for trial on the merits, subject to testing and to resolution under the proper standard of proof.").

exhibits that included a letter from the Big Sky Fire Department supporting the development of the cul-de-sac area and photos of the disputed areas and alleged interferences. The court granted Lone Peak's preliminary injunction, which it followed with written findings of fact and conclusions of law.

¶9 In addition to the facts described above, the District Court found that COS 1754 "depicts certain access easements, including a cul-de-sac easement . . . partially located on the Stephenson Property for the benefit of all tracts contained within COS 1754"; the 1993 Affidavit of Declaration grants a 60-foot access easement shown on COS 1754 for "ingress and egress for the use and benefit of the owners of all tracts within COS 1754"; COS 1754A did not relocate the cul-de-sac easement partially located on the Stephenson property; the Smith-Lone Peak Deed describes the 30-foot easement; the 30-foot easement allows Lone Peak to access Skywood Road at its termination; there is almost a 200- to 300-degree turn for a vehicle "coming from Skywood Road turning onto Lone Peak property, and the cul-de-sac allows fire trucks, emergency vehicles, and other guests to access the Lone Peak Property"; the 30-foot easement and cul-de-sac easement "were granted to provide access to the Lone Peak Property because due to topography, there is no other reasonable means for driveway access to the residence on the Lone Peak Property"; and the 2013 Access Easement that Stephenson executed specifically references an exhibit that shows a 30-foot wide access and utility easement across Lot 11 (Stephenson's property) for use of Lot 13 (Lone Peak Property) per Doc. No. 2176107, which is the Smith-Lone Peak Deed.

¶10 The District Court found Schertel "or others have not been able to access the Lone Peak Property [at times] due to Stephenson's conduct"; boulders and logs were placed

7

within the 30-foot easement and cul-de-sac easement that prevent Lone Peak from "fully using" both easements and interfere with "fire truck turn radius within the cul-de-sac easement"; the fire department letter demonstrates support for the development of the cul-de-sac to enhance safety and allow emergency vehicles to turn around safely and efficiently, creating quicker response times that "can make a significant differen[ce] in life-saving emergencies"; Schertel was concerned that the fire department may not be able to access Lot 13 in an emergency, which creates the risk that a fire would spread quickly to adjacent properties; and ready access to Lone Peak Property protects the entire community. Finally, the District Court found that Stephenson placed a speed bump within the cul-de-sac easement; he clears out snow in the winter, which creates large ruts and presents clearance issues; there have been "at least two times when a car could not access the Lone Peak Property in the winter due to the clearance issues with the speed bump"; and neither "an ambulance [nor] firetruck could access the Lone Peak Property in the winter due to the clearance issues presented by the speed bump and ruts." It enjoined Stephenson, during the pendency of the litigation, from installing any improvements or structures within the 30-foot easement and cul-de-sac easement and from interfering with or obstructing the two easements during litigation. The order also required Stephenson to remove the improvements, structures, and obstacles placed within the two alleged easements.

## STANDARD OF REVIEW

¶11 "The grant or denial of injunctive relief is a matter within the broad discretion of the district court based on applicable findings of fact and conclusions of law." *Planned Parenthood of Mont.*, 2024 MT 227, ¶ 10, 418 Mont. 226, 557 P.3d 471 (quoting *Davis v.*

8

*Westphal*, 2017 MT 276, ¶ 10, 389 Mont. 251, 405 P.3d 73). "We review a district court's grant or denial of a preliminary injunction for manifest abuse of discretion." *Mercer v. Mont. Dep't of Pub. Health & Hum. Servs.*, 2025 MT 9, ¶ 9, 420 Mont. 201, 562 P.3d 502. "A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *Mercer*, ¶ 9. "A manifest abuse of discretion is one which is obvious, evident, or unmistakable." *Planned Parenthood of Mont.*, ¶ 10.

¶12 We review the District Court's findings of fact for clear error and the conclusions of law for correctness. *Davis*, ¶ 10. "A factual finding is clearly erroneous if the finding is not supported by substantial evidence in the record, if the trial court misapprehended the effect of that evidence, or if, although there is evidence to support it, our review of the record leaves us with the definite and firm conviction that a mistake has been committed." *Flying T Ranch, LLC v. Catlin Ranch, LP*, 2022 MT 162, ¶ 15, 409 Mont. 478, 515 P.3d 806. "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion, even if weak and conflicting." *Flying T Ranch, LLC*, ¶ 15.

## DISCUSSION

¶13 Courts may grant a preliminary injunction if the applicant establishes that (1) they are likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the applicant's favor; and (4) the order is in the public interest. Section 27-19-201(1), MCA. The test is conjunctive. *Planned Parenthood of Mont.*, ¶ 12. The 2023 Legislature amended the preliminary injunction standard to reflect the intent that preliminary injunctions in Montana "mirror the federal

preliminary injunction standard" and closely follow United States Supreme Court case law. Section 27-19-201(4), MCA; 2023 Mont. Laws ch. 43, § 1 (SB 191). The 2025 Legislature amended the statute to clarify that when "conducting the preliminary injunction analysis, the court shall examine the four criteria in subsection (1) independently. The court may not use a sliding scale test, the serious question test, flexible interplay, or another federal circuit modification to the criteria." Section 27-19-201(4)(b), MCA; 2025 Mont. Laws ch. 20, § 1 (HB 409) (abrogating in part *Stensvad v. Newman Ayers Ranch, Inc.*, 2024 MT 246, ¶ 29, 418 Mont. 378, 557 P.3d 1240).[3] Broadly, Stephenson argues that the District Court erred because Lone Peak failed to meet its evidentiary burden on each of the four preliminary injunction factors, and the preliminary injunction failed to preserve the status quo.

**Status quo**

¶14　The purpose of a preliminary injunction "is to preserve the status quo and 'minimize harm to all parties pending full trial'" or resolution on the merits. *Flying T Ranch, LLC*, ¶ 33 (quoting *Yockey v. Kearns Props., LLC*, 2005 MT 27, ¶ 18, 326 Mont. 28, 106 P.3d 1185). "The status quo is the last actual, peaceable, noncontested condition [that] preceded the pending controversy." *Flying T Ranch, LLC*, ¶ 28 (citations and internal quotations omitted).

¶15　In *Flora v. Clearman*, we concluded that a district court manifestly abused its discretion when it issued a preliminary injunction limiting the use of an easement to

---

[3] Because of this amendment, we do not address the parties' arguments regarding the "serious question test."

passenger vehicles. *Flora v. Clearman*, 2016 MT 290, ¶ 23, 385 Mont. 341, 384 P.3d 448. The last peaceable, non-contested condition allowed passenger vehicles, large trucks, and heavy equipment. *Flora*, ¶ 23. This was the status quo and thus what the preliminary injunction should have preserved. *Flora*, ¶ 23. In *Flying T Ranch, LLC*, plaintiffs used a disputed road for three years before the defendants placed a lock on a gate, thus forcing plaintiffs to use an alternate, unimproved route with access difficulties. *Flying T Ranch, LLC*, ¶¶ 7-8. On appeal of a preliminary injunction, defendants argued that the status quo was "uncontested and peaceful between the parties" even after it locked the gate because the plaintiff was using an alternate route. *Flying T Ranch, LLC*, ¶ 28. This Court rejected such an argument, reasoning that the plaintiffs "enjoyed largely unfettered access" prior to the locked gate, and it was defendants' actions of locking the gate, "regardless of legal justification, [that] triggered the current controversy." *Flying T Ranch, LLC*, ¶¶ 29-30. The period of time between the locked gate and plaintiffs commencing litigation "was not peaceable, but disputed, and was not the status quo period." *Flying T Ranch, LLC*, ¶ 30.

¶16 Lone Peak asserts the status quo is the use of both the 30-foot easement and the cul-de-sac easement without interferences installed by Stephenson after the claims were filed. Stephenson asserts that the status quo was Lone Peak's use of the Driveway it constructed in 2020 that Lone Peak has always used to access its property. The District Court's order fails to preserve the status quo, Stephenson contends, because it permits Lone Peak to use areas outside the bounds of the Driveway and instead requires Stephenson to remove the boulders, speed bumps, and other obstacles within the full area of both alleged

easements, thus granting Lone Peak the ultimate relief it seeks and constituting an abuse of discretion.

¶17    We agree with Lone Peak's characterization that the status quo is the use of the disputed areas (including the Driveway and alleged 30-foot and cul-de-sac easements) without interferences installed by Stephenson after litigation commenced.  Filings in the District Court record show that Schertel admitted to using the "the two-track access" (presumably, the Driveway) to access his property "to maintain the status quo" as Stephenson was claiming that Lone Peak's easements across the Stephenson Property were invalid, Lone Peak could not use them, and the parties were attempting "to negotiate an agreement to relocate Lone Peak's easements to the existing two-track access."  This occurred after the lawsuit began and before Stephenson began to place the disputed objects Lone Peak sought to have removed and to enjoin him from continuing to place. Stephenson's argument that he technically has not installed any obstructions on the Driveway fails to reconcile that—whatever the disputed status of the cul-de-sac and 30-foot-easement—the Driveway lies mostly within the two alleged easements and Lone Peak must drive through the cul-de-sac (including the speed bump) to access its property. It fails to address that even the period Stephenson asserts as the status quo (in 2020) was before he started to install the boulders and speed bump.

¶18    Like in *Flying T Ranch*, where locking the gate triggered the controversy, Stephenson's action of placing various materials, including boulders and a speed bump, "was not peaceable, but disputed, and was not the status quo period." *Flying T Ranch, LLC*, ¶ 30.  Although part of the Driveway lies outside both alleged easements, this does

not change the fact that the last peaceable use of the disputed areas was Lone Peak not just using the Driveway but accessing its property without the various interferences installed on the alleged easements—"regardless of [Stephenson's] legal justification[.]" *Flying T Ranch, LLC*, ¶ 30. The record shows that both Stephenson's and Lone Peak's asserted time frames were before Stephenson started placing the various impediments causing Lone Peak to file for a preliminary injunction.

¶19 Stephenson cannot create such a narrow definition that just because the use of the Driveway remains the same, this defines the status quo. The last peaceable and uncontested access to the Lone Peak Property by Schertel and his guests was not just across the Driveway but using the Driveway within the alleged cul-de-sac area and alleged 30-foot easement without the various objects Stephenson placed. *See Flora*, ¶ 23.

**Mandatory injunction**

¶20 "When the requested preliminary injunctive relief orders a responsible party to take action as opposed to simply maintaining the status quo, the preliminary relief is accurately characterized as mandatory and as such is subject to a more demanding standard." *Mercer*, ¶ 14 (quoting *N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024)) (internal quotation marks omitted). "Mandatory injunctions are most likely to be appropriate when the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Mercer*, ¶ 15 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017)) (internal quotation marks omitted). Unlike a prohibitory injunction, the plaintiff has a higher burden in a mandatory injunction under the first factor (likelihood of success on the merits), and "must

13

establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Mercer*, ¶ 14 (quoting *Reykdal*, 102 F.4th at 992).

¶21 In *Mercer*, the District Court issued a preliminary injunction requiring a state agency to make privileged information available to a state representative during a statutorily authorized record review. *Mercer*, ¶ 1. Because the representative sought an order mandating the department to affirmatively permit review of privileged documents that it previously refused to allow, we reasoned that the status quo was the department *not* releasing the records for review, which inflicted the asserted injury (the inability of the representative to timely review records). *Mercer*, ¶ 15. The relief that plaintiff sought went "well beyond simply maintaining the status quo" during litigation; as such, he needed to show that the law and the facts clearly favored his position. *Mercer*, ¶ 15.

¶22 Lone Peak asserts that *Mercer*'s mandatory injunction standard is not applicable here because the status quo is not the source of Lone Peak's injury, and the District Court's order simply requires Stephenson to restore the status quo. Stephenson stresses that the heightened mandatory injunction standard does apply here because the order requires him to act by removing the improvements, structures, and obstacles placed within the two alleged easements.

¶23 As resolved above, the status quo is the use of the disputed areas (including the two alleged easements) without the structures, interferences, or obstacles placed by Stephenson. Unlike *Mercer*, the injunction does not require the disclosure of privileged information. *Cf. Mercer*, ¶ 15. Although Stephenson is correct that the injunction requires him to "take action," the injunction here is not mandatory when viewed in relation to the

14

status quo. Instead, the injunction requires that Stephenson "maintain the status quo" by restoring the alleged easements to their last undisputed condition. *See Mercer*, ¶ 14. The status quo is not the source of the injury in this case. *Mercer*, ¶ 14. On these facts, the injunction is not a mandatory injunction subject to a higher standard under *Mercer*. Instead, Lone Peak must show only a likelihood of success on the merits.

**Likelihood of Success on the Merits**

¶24 To show a likelihood of success on the merits under § 27-19-201(1)(a), MCA, the applicant "must present a prima facie case but need not show a certainty of winning." *Cross v. State*, 2024 MT 303, ¶ 33, 419 Mont. 290, 560 P.3d 637. "Prima facie means literally at first sight or on first appearance but subject to further evidence or information." *Cross*, ¶ 33 (quoting *Weems v. State*, 2019 MT 98, ¶ 18, 395 Mont. 350, 440 P.3d 4).

¶25 "An easement is an interest held by one person in lands owned by another, consisting of the right to use the land for a specific purpose." *Woods v. Shannon*, 2015 MT 76, ¶ 10, 378 Mont. 365, 344 P.3d 413. "Easements arise by express grant or reservation in a written instrument of conveyance, written declaration of covenant, operation of law (implication from necessity or prior use), or prescription." *Baugh v. H2S2, LLC*, 2024 MT 314, ¶ 16, 419 Mont. 472, 560 P.3d 1279 (quoting *O'Keefe v. Mustang Ranches HOA*, 2019 MT 179, ¶ 16, 396 Mont. 454, 446 P.3d 509). If a deed fails to include language expressly reserving a claimed easement, the easement-by-reference doctrine allows the creation of an express easement if the instrument of conveyance contains a specific reference to a recorded plat or certificate of survey on "which an easement is clearly depicted and adequately described." *Yorlum Props. Ltd. v. Lincoln Cnty.*, 2013 MT 298,

¶¶ 15-16, 372 Mont. 159, 311 P.3d 748. Adequate description requires that "first, the identities of the dominant and servient tenements must be ascertainable with reasonable certainty from the transaction documents; second, the transaction documents must give the owner of the property being burdened by the servitude knowledge of its use or its necessity." *Yorlum Props.*, ¶ 18 (citations and internal quotations omitted).

¶26 In analyzing the likelihood of success on the merits, the District Court concluded that Lone Peak made a prima facie case that the 30-foot-wide access is an express easement, the cul-de-sac area is an easement-by-reference, and Stephenson's actions unreasonably interfered with the two easements. The court reasoned that the 2013 Agreement, signed by Stephenson, "specifically incorporates" the 30-foot easement described in the Smith-Lone Peak Deed; the cul-de-sac access is referenced in the Smith-Stephenson deed and COS 1754A; the easement is "adequately described" based on testimony by both parties' surveyors; Lone Peak is entitled to use the cul-de-sac easement as depicted on COS 1754 and COS 1754A and the entire 30-foot easement without interference or obstructions by Stephenson; and the boulders and speed bump constituted unreasonable interferences because they prevent Lone Peak from using a portion of the easement (even if Lone Peak still technically has an unobstructed pathway), create safety concerns, and make year-round use inconvenient.

¶27 On appeal, Stephenson argues that neither of the easements alleged by Lone Peak is valid. He contends that the 30-foot easement was not properly recorded in the chain-of-title for Stephenson's property, thus violating the narrow chain-of-title doctrine that he asserts Montana followed when Stephenson took title to the property in 2010. *Nelson v. Barlow*,

16

2008 MT 68, ¶ 16, 342 Mont. 93, 179 P.3d 529 (*overruled by Earl v. Pavex Corp.*, 2013 MT 343, ¶ 31, 372 Mont. 476, 313 P.3d 154). Although Montana adopted a broad chain-of-title doctrine under *Nelson* in 2013, Stephenson argues his deed is subject to the narrow chain-of-title doctrine given the time it was acquired. He further argues that the cul-de-sac easement depicted on COS 1754 and COS 1754A benefits members of the homeowner's association, not Lone Peak's property specifically. He contends that it fails to adequately describe that Lone Peak's property will be the dominant tenement or that the easement will be used as a private access easement.

¶28 Lone Peak responds that the District Court properly concluded there was a prima facie case that the two easements existed and that Stephenson unreasonably interfered with those easements. It contends that Stephenson's chain-of-title arguments fail to address the District Court's conclusion that the 2013 Access Agreement incorporates the 30-foot easement in the Smith-Lone Peak Deed, *Nelson* is no longer good law, *Earl*'s broad chain-of-title holding applies to the deed, and the District Court correctly relied on the surveyor testimony and affidavit of dedication to conclude that the cul-de-sac easement was adequately described.

¶29 Looking first at the likelihood of success on the 30-foot easement, it is not necessary to address Stephenson's narrow chain-of-title argument given the District Court's reliance on the 2013 Agreement. The 2013 Access Agreement attached an exhibit incorporating the 30-foot easement as described by the Smith-Lone Peak Deed. A declaration by Stephenson states that "it is my understanding that the Easement Agreement conveys a 30-foot-wide easement for access and utilities burdening the Stephenson Property for the

17

benefit of the Lone Peak property (the '2013 Access Easement')." Stephenson's own surveyor testified that the easement from the 2013 Agreement "burdens Lot 11, for the benefit of Lot 13" and stated that there was extensive overlap between the easement in the 2013 Agreement and that in the Smith-Lone Peak Deed. Substantial record evidence supports the District Court's findings used to reach its conclusions regarding the impact of the 2013 Agreement. Stephenson may pursue his chain-of-title argument as the case proceeds but "[i]n determining the merits of a preliminary injunction, it is not the province of either the District Court or this Court on appeal to determine final matters that may arise upon a trial on the merits." *Flying T Ranch, LLC*, ¶ 38 (quoting *Yockey*, ¶ 18). "In granting temporary relief by injunction, courts of equity should in no manner anticipate the ultimate determination of the questions of right involved." *Flying T Ranch, LLC*, ¶ 16. Given the court's reliance on the 2013 Agreement and the current law following the broad chain-of-title doctrine, the District Court did not incorrectly state the law or abuse its discretion in finding a likelihood that Lone Peak will succeed on its claim to a 30-foot express easement described in the Smith-Lone Peak Deed and incorporated into the 2013 Agreement.

¶30 Stephenson's arguments disputing the likelihood of success regarding the alleged cul-de-sac easement similarly fail. Under the easement-by-reference doctrine, "failing to fix an easement's precise location in the transaction documents does not render the easement void as a matter of law." *Yorlum Props.*, ¶ 22. An easement by reference may meet the adequate description requirements even when relating to a shared road for the benefit of owners in a general plan development. *O'Keefe*, ¶ 30. In *O'Keefe*, landowners

on two eastern lots in a subdivision placed a cable gate across the platted road at the western side of their property and argued that the end of the road in the subdivision benefited only their two lots (to the exclusion of the other subdivision lots). *O'Keefe*, ¶¶ 11, 13. We held that an easement by reference was properly created based on a subdivision plat and the deeds that referenced the plat. *O'Keefe*, ¶ 21. We reasoned that a "parcel of land may be reciprocally servient and dominant to other parcels of land formerly under common ownership." *O'Keefe*, ¶ 20. We thus held that the deeds and referenced plat "created a 60′ roadway easement" over the two disputed lots "to the benefit of the other [subdivision] lots for ingress and egress to and from the subdivision and adjoining lands." *O'Keefe*, ¶ 30.

¶31 The documents used by the District Court demonstrate that COS 1754 and COS 1754A depict a 60-foot road ending in a circle overlapping Lot 11 with access for the landowners within the certificate of survey. Lone Peak is an owner of a tract within COS 1754. Stephenson's surveyor—Michael Lapp—testified on cross-examination that a "road that ends in a circle with a turnaround" is generally called a cul-de-sac and he had outline the circle depicted on COS 1754 and 1754A when conducting an aerial survey of the site.[4] Lone Peak's briefing attached an affidavit from Lone Peak's surveyor—Jake Ziska—stating that he could sufficiently locate the cul-de-sac and that it would not be typical to separately describe a cul-de-sac in addition to the road on the certificate of survey. The court concluded that the road and cul-de-sac have the same purpose of

---

[4] The transcript from the October 10, 2023 hearing describes Plaintiff's Exhibit 5 as an aerial survey, but the electronic record of exhibits shows that Plaintiff's Exhibit 5 is a website page of a speed bump. The transcript describes Plaintiff's Exhibit 6 as a website page of a speed bump. The omission of this exhibit does not change this Court's analysis.

providing access to and from Lone Peak's property and allowing turn-arounds at the end of the road for motorists and public safety vehicles. Given our case law in *O'Keefe* and *Yorlum* and the substantial record evidence, the District Court did not err when it found a likelihood of success regarding the alleged cul-de-sac easement.

¶32 Weighing the testimony and evidence presented, the court concluded that the boulders, speed bump, and ruts prohibited the use of ordinary vehicles, ambulances, and fire trucks in the winter and made it more inconvenient year-round, which showed a likelihood of an unreasonable interference with Lone Peak's use of the easement and the fire truck turn radius. "Our role is not to reweigh conflicting evidence or to question a district court's assessment of the strength of the evidence on a preliminary injunction appeal." *Cross*, ¶ 38. It is not outside "the bounds of reason" that Lone Peak showed a likelihood of success on its claim that Stephenson unreasonably interfered with two alleged easements. *Mercer*, ¶ 9.

¶33 Procedurally, Stephenson alleges that the District Court erred when, at the hearing, it stated that parties need not address any easements' validity because it was "assuming the 30-foot easement and the cul-de-sac easement" existed for the purpose of the hearing and wanted to address only whether there was an unreasonable interference. As Lone Peak notes, he fails to cite any authority that a court cannot focus the parties' arguments at this type of hearing. The District Court's determination to limit the arguments at the hearing to the issue of unreasonable interferences was a discretionary determination that we will not disturb. *See Cross*, ¶ 46 (holding that the District Court did not abuse its discretion when it refused to allow live testimony at a preliminary injunction hearing). Stephenson

20

filed ample evidence and arguments leading up to the hearing disputing the easements' validity. The court explained its reasoning, acknowledged that Stephenson challenged the easements' existence, and reiterated that this was just a preliminary hearing, not a final ruling, and it would eventually decide what "is and isn't a real easement[.]" *See Cross*, ¶ 38 ("The District Court properly reserved final resolution of the parties' conflicting evidence for trial on the merits[.]").

¶34    Citing *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024), Stephenson next argues that the District Court abused its discretion when it considered certain affidavits Lone Peak presented at the hearing without giving him an opportunity to respond. The record shows that, following the preliminary injunction hearing, Stephenson filed an objection to five of the affidavits from Lone Peak. Lone Peak responded that three of the affidavits were filed in motions prior to the hearing, and Lone Peak submitted two additional affidavits at the hearing in accordance with § 27-19-303(2), MCA, which allows "each party [to] present affidavits or oral testimony" at the hearing.

¶35    *Flathead-Lolo-Bitterroot Citizen Task Force* addressed whether it was an abuse of discretion for a court to consider new arguments and materials submitted in a plaintiff's reply brief prior to the preliminary injunction hearing. *Citizen Task Force*, 98 F.4th at 1188. Because the record showed that defendants had an opportunity to respond to plaintiff's submissions, there was no abuse of discretion. *Citizen Task Force*, 98 F.4th at 1188-89. First, three of the five affidavits that Stephenson objected to in the District Court were filed before the hearing, thus failing to demonstrate any abuse of discretion because Stephenson had the opportunity to respond. *See Citizen Task Force*, 98 F.4th

21

at 1188-89. The other two affidavits were from Osmane Harris (a cleaning service provider) and Leo McDonald (a property manager) and primarily concern their testimony that they were unable to access the Lone Peak Property due to the snow ruts around the speed bump. Section 27-19-303(2), MCA, allows a party to submit affidavits at a preliminary injunction hearing. Stephenson was given an opportunity to respond because he submitted filings to the District Court following the hearing and before its order granting the preliminary injunction.

¶36 But even if the District Court should not have considered the affidavits, it would not change our holding. At the hearing, Stephenson admitted that he shoveled the snow around the speed bump that creates the ruts; and Schertel testified that the snowy conditions and speed bump had precluded individuals driving in a regular vehicle from accessing his property on "at least one or two occasions." Stephenson's attorney did not object. Thus, the testimony that the speed bump and snowy conditions precluded guest access to Lone Peak's property existed in the record irrespective of the affidavits. Stephenson was able to file his objections with the District Court following the hearing, and the evidence to which he objects was separately in the record even without considering the two additional affidavits. We find no abuse of discretion by the District Court.

¶37 Considering the likelihood of success on the merits, the District Court reviewed the certificates of survey, affidavit of declaration, warranty deeds, and the 2013 Access Agreement. It heard testimony and considered evidence regarding the disputed areas, and it issued extensive findings of fact and conclusions of law. That it came to a conclusion different from Stephenson's position does not mean it failed to address the evidence. *See*

22

*Cross*, ¶ 38. Substantial evidence supports the District Court's decision to preserve the status quo and grant preliminary relief while the competing claims remain pending for resolution on the merits. *Flora*, ¶ 21. The final factual findings and legal conclusions "are reserved for a trial on the merits, subject to testing and to resolution under the proper standard of proof." *Flying T Ranch*, ¶ 39. We conclude only that, "at this stage of the litigation, the District Court did not obviously, evidently, or unmistakably abuse its discretion by granting preliminary injunctive relief." *Flying T Ranch*, ¶ 39.

**Irreparable Harm**

¶38 "Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely, not merely speculative, in the absence of an injunction." *Mercer*, ¶ 23; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375-76 (2008). "[M]oney damages are not considered irreparable harm" because they may be recovered without resorting to a preliminary injunction. *Flying T Ranch*, ¶ 19. "Injunctive relief is generally not available to remedy a trespass where an action at law for damages or ejectment will provide complete relief. . . . [But] compensatory damages are generally inadequate to fully remedy a continuous or recurring encroachment on real property." *Davis*, ¶ 27. This Court has found money damages insufficient and unable to furnish the requisite relief of being able to access property over a disputed easement. *Flying T Ranch*, ¶ 19.

¶39 Reasoning that the items installed affected the ability of Lone Peak and others, including fire trucks, to safely and effectively access the Lone Peak Property, the District Court concluded that Lone Peak established irreparable harm and that monetary damages

23

alone would not reduce the risk of harm created by Stephenson's actions. Only injunctive relief can accomplish that.

¶40    Using his definition of the status quo, Stephenson asserts that Lone Peak has not suffered harm from a loss of access because it can continue using the Driveway, the improvements do not block or obstruct the Driveway, the speed bump on the Driveway never prevented Lone Peak from accessing its property, and the District Court found only that the items prevented Lone Peak from using the full area of the two alleged easements but did not find that these items prevented Lone Peak from using the Driveway. Stephenson thus contends that the preliminary injunction cannot properly address any alleged harm.

¶41    In *Flying T Ranch*, unlike here, the moving party was completely blocked by a gate from accessing its property and had to use a separate access. *Cf. Flying T Ranch*, ¶ 8. On the other hand, as we already determined, the status quo was Lone Peak's use of both alleged easements without interference. Because the improvements and obstacles constitute continuous encroachments on the property, the preliminary injunction addresses this harm. *See Davis*, ¶ 27. Stephenson overlooks the District Court's findings and supporting evidence that the speed bump prevented Lone Peak's guests from accessing the property. *See Woods*, ¶ 15 ("An express easement for the purpose of ingress and egress, with no other restriction, entitles the holder of the easement and his or her family, tenants, and invitees . . . to use the road 24 hours a day by any form of transportation that does not inflict unreasonable damage or unreasonably interfere with the enjoyment of the land crossed by the easement[.]") (citation and internal quotations omitted).

¶42 Stephenson's assertion that no evidence supports the finding that neither "an ambulance nor fire truck could access the Lone Peak Property in winter due to clearance issues" overlooks testimony that the ruts made it hard for standard vehicles, evidence that Lone Peak's guests could not access the property because of the speed bump and ruts in the snow, and evidence that emergency vehicles' access would be impeded. The court did not misapprehend the effect of the evidence when it found this would create problems for emergency vehicles. *Flying T Ranch*, ¶ 15. To read the evidence as Stephenson asks would improperly ask us to "question a district court's assessment of the strength of the evidence on a preliminary injunction appeal." *Cross*, ¶ 38. Stephenson's characterization of the status quo is inaccurate, and he has failed to show clear error in the District Court's factual findings supporting its determination that Lone Peak would suffer irreparable harm in the absence of a preliminary injunction.

**Balance of Equities**

¶43 The applicant must establish that "the balance of equities" tips in their favor. Section 27-19-201(1)(c), MCA; *Winter*, 555 U.S. at 20, 129 S. Ct. at 374. The District Court concluded that the balance of equities weighed in Lone Peak's favor because "the right and need of Lone Peak, its guests, and emergency vehicles" to access the property "outweighs Stephenson's desire to landscape," and the injunction would require Stephenson simply to follow the law.

¶44 Stephenson argues that the court failed to appreciate his right to use his property and that an injunction is not necessary for Lone Peak to access the property. Instead, he contends, the District Court's order was a blanket prohibition against Stephenson using his

25

own property, made no allowance for Stephenson's lawful use of his property, and failed to differentiate between unreasonable and reasonable improvements.[5]

¶45 The District Court's order is not a prohibition against Stephenson's "lawful use of his property." As Stephenson acknowledges, the servient estate may "make use of the land in any lawful manner," *provided that such use does not interfere with the dominant estate's use. Musselshell Ranch Co. v. Seidel-Joukova*, 2011 MT 217, ¶ 18, 362 Mont. 1, 261 P.3d 570. The District Court order required Stephenson to stop installing improvements or structures on the two alleged easements and to remove the obstructions he placed on the two alleged easements after the court concluded that the obstructions were sufficient to make a prima facie showing of unreasonable interference. "[W]hether interference is reasonable depends on the factual circumstances of each particular case." *Musselshell Ranch Co.*, ¶ 19 (citations omitted). This ultimately presents a question for the merits. The court's order reflects the purpose of a preliminary injunction: to preserve the status quo and minimize harm to the parties until a final resolution on the merits can be reached. *Flying T Ranch, LLC*, ¶ 28.

¶46 Stephenson has not shown clear error in the factual findings by the District Court—supported by substantial evidence—that his actions impacted emergency vehicle access and prevented Lone Peak guests from accessing the property. Stephenson testified that the

---

[5] Under the balancing of equities and public interest, Stephenson continues to argue the invalidity of the two easements and that the status quo (as defined by Stephenson) allows unobstructed use of the Driveway. Having resolved these arguments under the first factor, we do not address Stephenson's further arguments as to the invalidity of the alleged easements or the continued use of the Driveway.

speed bump was to reduce speeding in the area, but it appears from the record that it was placed only on the portion used to access Lone Peak's parcel (Lot 13)—not Lot 11 or Lot 12. He testified that he installed the boulders for landscaping. Schertel discussed concerns about a fire truck's turn radius with the current boulders' placement and guests' inability to access the property in snow with the speed bump. The fire department letter supported the cul-de-sac to allow fire vehicles to turn around safely and efficiently. We do not question the District Court's assessment of the strength of evidence. *Cross*, ¶ 38. The court correctly applied the law to balance the competing interests and injuries between the parties. *See Mercer*, ¶¶ 27-28. Given the record evidence, there was no obvious, manifest, or evident abuse of discretion when the District Court concluded that the balance of equities tipped in Lone Peak's favor.

**Public Interest**

¶47 Last, the applicant must show that an injunction is in the public interest. Section 27-19-201(1)(d), MCA. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Mercer*, ¶ 29. Under the fourth factor, the court concluded that it is in the public interest to ensure property owners can access their residences and it "is particularly important, from a public interest standpoint" to allow emergency services, such as fire trucks, safe and effective access. Stephenson argues that the injunction obstructs him from using his property, that it is not necessary to ensure access to Lone Peak's property, and that Lone Peak "proceeded for years without ensuring adequate" emergency services access.

¶48 Again, record evidence supports the District Court's preliminary findings that Stephenson's actions interfered with Lone Peak's guests' ability to access its property, Lone Peak's ability to use the entirety of the disputed easements, and the effective access of emergency vehicles. Emergency service access is a matter of "public consequence" that is particularly relevant under the public interest factor. *See Mercer*, ¶ 29. Stephenson is not obstructed from using his property but rather required to remove the alleged interferences and enjoined from continuing to place more objects within the disputed areas until the resolution on the merits. The District Court did not err in concluding that the injunction is in the public interest.

## CONCLUSION

¶49 Neither the District Court's order nor this Opinion is conclusive to any ultimate question of merits, including what documents establish which easements (if any). Substantial record evidence supported each of the District Court's preliminary findings, however, and Stephenson has failed to show clear error in these findings. The court correctly applied the relevant law under each factor, and it did not manifestly abuse its discretion when it granted Lone Peak the preliminary injunction. We affirm the District Court's order.

/S/ BETH BAKER

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE